Andrew G. Watters (#237990)
Susanna L. Chenette (#257914)
555 Twin Dolphin Dr., Ste. 135
Redwood City, CA 94065
+1 (415) 261-8527
andrew@andrewwatters.com

Attorneys for Plaintiffs Hanieh Sigari and Qyral, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HANIEH SIGARI, an individual;
QYRAL, LLC, a California Limited
Liability Company,

   Plaintiffs,

  v.

DARIUSZ BANASIK, an individual;
Does 1-10,

   Defendants;

SHOPIFY (USA) INC., a Delaware
Corporation; GOOGLE LLC, a Delaware
Limited Liability Company;
GODADDY.COM, LLC, a Delaware
Limited Liability Company; METRICS
GLOBAL, INC., a Nevada Corporation;
RECHARGE INC., a Delaware
Corporation,

Nominal Defendants.

   )
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 5:24-CV-01816-EJD

FIRST AMENDED
VERIFIED COMPLAINT

1. Statutory Violations of Computer
   Fraud and Abuse Act
   18 U.S.C. sec. 1030
2. Civil Racketeering
   18 U.S.C. sec. 1964(c)
3. Statutory Violations of Cal. Penal
   Code sec. 502 (Computer
   Tampering)
4. Statutory Violations of Cal. Penal
   Code sec. 532 (False Personation)
5. Tortious Interference
6. Breach of Fiduciary Duty
7. Declaratory Relief
8. Unfair Competition

JURY TRIAL DEMANDED

  FIRST AMENDED VERIFIED COMPLAINT

TABLE OF CONTENTS

INTRODUCTION ............................................................................3

PARTIES ................................................................................ 4

SUBJECT MATTER JURISDICTION .......................................................5

PERSONAL JURISDICTION ............................................................ 6

VENUE AND INTRADISTRICT ASSIGNMENT .......................................... 6

FACTS .................................................................................. 6

FIRST CAUSE OF ACTION – COMPUTER FRAUD .......................................10

SECOND CAUSE OF ACTION – CIVIL RACKETEERING ................................ 11

THIRD CAUSE OF ACTION – COMPUTER TAMPERING ................................ 11

FOURTH CAUSE OF ACTION – FALSE PERSONATION ................................11

FIFTH CAUSE OF ACTION – TORTIOUS INTERFERENCE ..............................12

SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY .........................12

SEVENTH CAUSE OF ACTION – DECLARATORY RELIEF .............................12

EIGHTH CAUSE OF ACTION – UNFAIR COMPETITION ...............................12

PRAYER ............................................................................... 12

VERIFICATION ........................................................................13

INTRODUCTION

1. The purpose of this action is to enjoin and seek damages for computer fraud and abuse stemming from the illegal, unauthorized, and malicious lock-out of Plaintiff Ms. Hanieh Sigari from her multi-million dollar company by her soon-to-be ex-husband, Defendant Mr. Dariusz Banasik.

2. Qyral, LLC is a wellness company with over 10,000 customers and 1,300 wellness consultants who travel the country promoting Qyral products to their networks, and elsewhere. That is 1,300 people, plus Plaintiff Ms. Sigari, who rely on Qyral for their livelihoods. *Qyral is Ms. Sigari's company*, not Defendant's– she is the CEO, sole manager, and sole member of the LLC. Through Defendant's illegal actions on 3/22/2024, he has irreparably harmed the company and its many employees and consultants, as well as Plaintiffs.

3. To summarize the events of Friday, March 22, 2024, Defendant *illegally and without proper authority:* (1) took control of and locked Plaintiff out of all of Qyral's I.T. infrastructure, including its Google Administrator panel, domain name, Shopify account, phone numbers, email accounts, and all other electronic assets; (2) shut off Plaintiff's mobile phone number and two-factor authentication, thereby preventing her from making or receiving calls or text messages, and preventing her from resetting her passwords and interacting with various service providers; (3) sent out a false, defamatory "announcement" stating that Plaintiff had been removed from her position with Qyral for purported breaches of fiduciary duty; (4) purported to fire a number of company employees and contractors; (5) announced that the Facebook group (still controlled by Plaintiff) was no longer authoritative and should be considered compromised; (6) started transferring an as-yet unknown amount of money out of the business accounts; and (7) changed the account used for the company's business deposits to one under his control. Defendant's scheme was intended to sow distrust and discord throughout Qyral, thereby irreparably damaging it and its brand, and destroying the personal reputation of Plaintiff, while also enriching Defendant. All of this was in violation of the law, specifically the Computer Fraud and Abuse Act, which is a Federal criminal statute that prohibits exactly Defendant's conduct. His conduct also violated the Automatic

FIRST AMENDED VERIFIED COMPLAINT

Temporary Restraining Orders that are on the Summons that *Defendant filed* in a recent divorce case that is pending in Santa Clara County, and numerous other provisions of State law in the Penal Code.

4. This action follows Plaintiff's demand letter of March 23, 2024 (attached as **Exhibit 1**) seeking the restoration of the status quo, to which there has been no response.

PARTIES

5. Plaintiff Hanieh Sigari ("Ms. Sigari" or "Plaintiff") is the owner, sole member, and CEO of Qyral, LLC, which is a wellness company devoted to skin care and weight loss. Ms. Sigari was until recently married to Defendant Dariusz Banasik, who filed for divorce on March 5, 2024 in State court. Plaintiff is a resident of this State.

6. Plaintiff Qyral, LLC ("Qyral") is a California Limited Liability Company in good standing with the Secretary of State of California. The company does millions of dollars in business on a monthly basis and has 1,300 consultants who work for it, plus more than 100,000 customers who purchase its products.

7. Defendant Dariusz Banasik is Plaintiff's soon-to-be ex-husband, who had no role with Qyral but who inserted himself into its Information Technology matters by offering casual assistance to Plaintiff over the years she was running the company. Plaintiff, as a non-technical person and then being married to Defendant, agreed to accept the Information Technology assistance without offering Defendant a role in her company, and she trusted Defendant. Defendant abused this trust in order to execute a plan that must have taken months to prepare, resulting in the illegal lock-out of Plaintiff from her own company.

8. Defendants Does 1-10 are persons of unknown identities and capacities, who are named as Does pursuant to Cal. Code of Civil Procedure sec. 474. As those persons' identities and capacities are discovered, this complaint will be amended accordingly. The Does are the agents, employees, joint venturers, principals, associates, and/or conspirators of each other, and are accordingly legally liable in some capacity for each other's misconduct.

//

//

- 4 -    FIRST AMENDED VERIFIED COMPLAINT

9. Nominal Defendant SHOPIFY (USA) INC., a Delaware Corporation, is a third party service provider that is holding substantial funds (hundreds of thousands of dollars) belonging to Qyral, LLC, and is joined solely for the purposes of binding the provisional and permanent injunctive relief, as well as the final judgment.

10. Nominal Defendant GOOGLE LLC, a Delaware Limited Liability Company, is a third party service provider that provides the I.T. accounts belonging to Qyral, LLC, such as its Google Workspace product, and is joined solely for the purposes of binding the provisional and permanent injunctive relief, as well as the final judgment.

11. Nominal Defendant GODADDY.COM, LLC, a Delaware Limited Liability Company, is a third party service provider that administers the internet domain name, website, and other I.T. assets belonging to Qyral, LLC, and is joined solely for the purposes of binding the provisional and permanent injunctive relief, as well as the final judgment.

12. Nominal Defendant METRICS GLOBAL, INC., a Nevada Corporation, is a third party service provider that is holding substantial funds (hundreds of thousands of dollars) belonging to Qyral, LLC, and is joined solely for the purposes of binding the provisional and permanent injunctive relief, as well as the final judgment.

13. Nominal Defendant RECHARGE INC., a Delaware Corporation, is a third party service provider that is holding substantial funds (hundreds of thousands of dollars) belonging to Qyral, LLC, and is joined solely for the purposes of binding the provisional and permanent injunctive relief, as well as the final judgment.

SUBJECT MATTER JURISDICTION

14. The District Court has original jurisdiction of actions under the Computer Fraud and Abuse Act pursuant to 18 U.S.C. sec. 1030(g), as well as original jurisdiction of actions under the Civil RICO law pursuant to 18 U.S.C. sec. 1964(c). Accordingly, this is a Federal Question without regarding to any amount in controversy requirements.

15. The District Court has Supplemental Jurisdiction of the transactionally related State law claims pursuant to 13 U.S.C. sec. 1367(a), as they comprise the same integrated transaction.

//

- 5 -     FIRST AMENDED VERIFIED COMPLAINT

PERSONAL JURISDICTION

16. This Court has personal jurisdiction over all Defendants, who are residents of this State, reside in this District, and have sufficient minimum contacts with California, or have consented to personal jurisdiction by way of corporate registrations with the California Secretary of State.

VENUE AND INTRADISTRICT ASSIGNMENT

17. Venue is proper in this District, as a substantial amount of the underlying events occurred here. In addition, the lead/primary Defendant is found or resides here. As the case arises in Palo Alto, California, Plaintiff respectfully seeks assignment of this action to the San Jose division of this Court for convenience of counsel and herself.

FACTS

18. Qyral, LLC is a wellness company started in 2019 by Plaintiff. Although the company was started during the parties' marriage to each other, the company has belonged solely to Plaintiff and been under her management and control since the beginning. Regardless of any characterization issues implicating the law of community property or otherwise, even if the company were community property, Defendant would have had no right to do what he did.

19. Qyral has approximately 1,300 wellness consultants, who travel the country promoting its products and services to over 10,000 customers. Plaintiff was on a business trip to Utah promoting the company to various online influencers when Defendant executed his plan to cut her off, which drastically impaired Plaintiff's ability to respond to his illegal, wrongful acts because Plaintiff did not have access to her office, computer, or employees.

20. Qyral relies strongly on Plaintiff's personal brand. Plaintiff is the "Martha Stewart" or "Oprah" of Qyral, and her personal efforts are responsible for the company's success, not any (minimal) contributions from Defendant. This had been the situation throughout the company's history of five years, during which it experienced massive growth due to Plaintiff's successful promotion of its products. In any case, the fact that Qyral is heavily reliant on Plaintiff's personal brand magnifies the wrongdoing of Defendant exponentially. Without Plaintiff, and without Plaintiff having access to her I.T. infrastructure and communications,

- 6 -    FIRST AMENDED VERIFIED COMPLAINT

the company will fail.

21. Essentially, the company has the following workflow:



22. The first indication that something was wrong was at 1:43 p.m. on Friday the 22nd. At that time, the Chief Operating Officer of the company, who was attending the Utah business trip with Plaintiff, commented that her Slack access had just been suddenly cut off. Seeing the COO's screen, which confirmed this, Plaintiff checked her own Slack account and saw that her Slack access had also been suddenly cut off. It turns out that *everyone* in the company's leadership had been kicked out of Slack suddenly and with no warning. Following the removal from Slack, Plaintiff started getting password reset notifications from various service providers, until two minutes later at 1:45 p.m., when her Google Administrator access was removed. Plaintiff's phone then went into "SOS" mode and she could not place or receive

- 7 -      FIRST AMENDED VERIFIED COMPLAINT

calls or text messages. Then at 2:04 p.m., after Defendant had cut off Plaintiff's email and phone and when she had no way to communicate, Defendant sent his first email (**Exhibit 2**) to Qyral employees and consultants, stating the Plaintiff had been removed from her company for breaches of fiduciary duty. Shortly after this, Defendant sent a mass email to Plaintiff's family accusing her of having an affair and providing contact information for the alleged romantic partner. At this point (Friday shortly after 2 p.m.), Plaintiff discovered that her Chase banking username and password had been reset and that Defendant was starting to transfer funds out of the Chase operating account by wire (Plaintiff saw one transfer of $40,000.00 in that brief window) into a separate account under his control. The Chase business account is usually at $240,000.00 and Plaintiff saw that it was then under $90,000.00 which is abnormal. Plaintiff was able to call Chase and initiate a temporary freeze on the business accounts, however, she also learned that she had been locked out of her personal accounts as well. And Defendant also locked Plaintiff out of PayPal, where a substantial amount of funds are received or held from customers. Plaintiff learned from the other attendees of the business trip to Utah that people were trying to contact her and could not, because Defendant cut off her phone line. Plaintiff tried to reset her Domain Name Service entries on GoDaddy in order to temporarily shut off the company email, but she could not provide the 2-factor authentication codes because the authentication was under her just-disconnected phone number. The rest of the afternoon of the 22nd was filled with Plaintiff trying to find litigation counsel to handle this matter on an emergency basis. Then at 10:38 p.m., Defendant sent a second mass email (**Exhibit 3**), in which he claimed, falsely, that the Facebook account (still controlled by Plaintiff) was compromised and no longer authoritative. Finally, Defendant unlawfully and without proper authority changed the bank account where payments go from the Chase operating account to a different account, presumably under his control. A copy of screenshot with the Stripe account change notification is attached as **Exhibit 4**.

23. Plaintiff was harmed by being cut off from access to her own company, being unable to communicate with customers, and having potentially millions of dollars siphoned off into

- 8 -                    FIRST AMENDED VERIFIED COMPLAINT

accounts under Defendant's control.

24. Plaintiff's counsel wrote a detailed demand letter (Exhibit 1) to Defendant in an effort to restore Plaintiff's control of her company. There has been no response as of this filing. This action followed on an emergency basis, and the pleadings will be amended according to law with additional facts and legal authority as the situation develops.

25. **Exhibit 5** is a copy of the Articles of Organization of the LLC showing that Plaintiff founded the company. **Exhibit 6** is a copy of the Statement of Information filed with the Secretary of State under penalty of perjury showing that Plaintiff is the CEO.

26. Since the filing of the original Verified Complaint, Defendant has continued his illegal course of conduct with impunity and has violated the T.R.O. by at least the following wrongful acts:

   (a) Despite actual notice of the T.R.O., Defendant has not restored *any* accounts or the company I.T. assets to Plaintiff's rightful control.

   (b) Contrary to the T.R.O., Defendant has not accounted for or returned *any* stolen funds.

   (c) Instead, Defendant continues to siphon money from the business account and take deposits into the new account under his control. To make matters worse, *Defendant also borrowed $200,000 on company credit* through Shopify's merchant financing program. That is $200,000 that the company will have to pay back, and which Defendant must intend to spend. Defendant also continues to divert funds from PayPal to accounts under his control.

   (d) Defendant has started making unusual purchases on his and Plaintiff's joint American Express card, which Plaintiff has had to cancel in order to protect herself.

   (e) Defendant continues to send emails and sow discord within Qyral, prompting several "legal update" emails from other staff who are trying not to get in the middle of this dispute.

   (f) Defendant has impaired or destroyed the ability of Plaintiff to regain control of the I.T. infrastructure by deleting her accounts.

   (g) Defendant has threatened to start unilaterally adjusting the pricing for Qyral products, thereby disrupting the company by impacting the 1,300 consultants who work for the

- 9 -                    FIRST AMENDED VERIFIED COMPLAINT

company and drastically decreasing their earnings.

(h) Defendant appears to have had this scheme in the planning stages for months.

27. Defendant recently retained counsel, and an exchange of emails occurred (incorporated by reference as supporting facts) as shown in the attached **Exhibit 7**, showing that Defendant's counsel is either horribly mistaken or is actively being misled by his client. Various additional occurrences have taken place showing that this no accident– this is a personal vendetta against Plaintiff by Defendant, including but not limited to his barrage of inappropriate, vengeful emails disrupting relationships with vendors and accusing Plaintiff of affairs, and similar matter.

FIRST CAUSE OF ACTION – COMPUTER FRAUD

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

28. The computer servers running Plaintiff's website are used extensively in interstate commerce because (1) they are used to coordinate orders across the country from customers and consultants on the platform, (2) they serve the Qyral website and enable interactivity through a chat feature, email feature, and other features. The computers are "protected computers" under the Computer Fraud and Abuse Act because they are used in or affect interstate commerce.

29. Through the foregoing course of conduct, Defendant violated the Computer Fraud and Abuse Act, specifically:

Count One: 18 U.S.C. sec. 1030(a)(2)(C)

30. Defendant violated this provision by intentionally accessing the computers running Plaintiff's platform, exceeding the scope of authorized access, and obtaining information from the computers such as customer lists, banking information, Plaintiff's emails, and other valuable and proprietary data. As the precise scope of Defendant's accesses is currently unknown to Plaintiff but known to Defendant, Plaintiff alleges the scope portion of the unauthorized access on information and belief.

Count Two: 18 U.S.C. sec. 1030(a)(4)

31. Defendant violated this provision by exceeding the scope of authorized access to further his

- 10 -    FIRST AMENDED VERIFIED COMPLAINT

intended fraudulent scheme, and thereby switched the bank accounts where funds are deposited, siphoning off at least $150,000 so far, with the intention of stealing approximately one million dollars per month in revenue.

Count Three: 18 U.S.C. sec. 1030(a)(5)

32. Defendant violated this provision by issuing commands on the computer servers running Plaintiff's platform that caused damage to the computers, such as the deletion of Plaintiff's Shopify account. Without the Shopify account, Plaintiff cannot see or manage her company or its orders from the 1,300 consultants and 10,000 or more customers who are on the platform. This intentionally or recklessly caused damage or loss. As the precise scope of Defendant's accesses is currently unknown to Plaintiff but known to Defendant, Plaintiff alleges the access portion of this count on information and belief.

SECOND CAUSE OF ACTION – CIVIL RACKETEERING

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

33. Defendant, through the foregoing course of conduct, caused to be transmitted over interstate wire (1) cash funds, and (2) fraudulent representations to Qyral consultants that were intended to fraudulently induce them to recognize Defendant as the new decision maker at Qyral. This was done in the furtherance of his wire fraud scheme to take control of a multi-million dollar company and siphon off millions of dollars in revenue. At least two or more acts of wire fraud occurred in this scheme, thereby injuring Plaintiff. Wherefore, Plaintiff seeks treble damages and attorney fees on this cause.

THIRD CAUSE OF ACTION – COMPUTER TAMPERING

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

34. Through the foregoing course of conduct, Defendant violated the State law against Computer Tampering found at Cal. Penal Code sec. 502, which essentially mirrors or exceeds the scope of the Computer Fraud and Abuse Act. Wherefore, Plaintiff seeks damages and attorney fees.

FOURTH CAUSE OF ACTION – FALSE PERSONATION

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

35. Through the foregoing course of conduct, Defendant impersonated Plaintiff in order to

change her Google Administrator credentials and lock her out of the business, in violation of Cal. Penal Code sec. 532.

FIFTH CAUSE OF ACTION – TORTIOUS INTERFERENCE

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

36. Through the foregoing course of conduct, Defendant defamed Plaintiff and committed various crimes, thereby tortiously interfering with her business relationships with customers and members of the Qyral platform. The defamatory communications are attached as Exhibit 2 and 3. The interference and defamation caused massive reputational harm to Plaintiff and the company because the communications were untrue and caused a loss of trust in the company and Plaintiff in an amount according to proof.

SIXTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

37. Through the foregoing course of conduct, Defendant breached his fiduciary duty to Qyral, LLC. Wherefore, Qyral, LLC seeks damages.

SEVENTH CAUSE OF ACTION – DECLARATORY RELIEF

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

38. There is a controversy between the parties as to the rightful control of Qyral, LLC. Plaintiff seeks a judicial decree pursuant to Cal. Code of Civil Procedure sec. 1060 that Plaintiff is the rightful CEO of Qyral.

EIGHTH CAUSE OF ACTION – UNFAIR COMPETITION

(Hanieh Sigari and Qyral, LLC v. Dariusz Banasik and Does 1-10)

39. Through the foregoing course of conduct, Defendant violated various Federal and State statutes and thereby committed Unfair Competition, in violation of Business and Professions Code sec. 17200. Wherefore, Plaintiff prays for injunctive relief and restitution/disgorgement of all ill-gotten gains.

PRAYER

1. Special damages of not less than ten million dollars ($10,000,000.00) or according to proof.
2. Punitive damages.

- 12 -        FIRST AMENDED VERIFIED COMPLAINT

3. Attorney fees and costs pursuant to the computer tampering law and racketeering law.

4. A decree confirming that Plaintiff Ms. Sigari is the rightful CEO and manager of the LLC, and confirming that all the service providers and vendors must recognize Plaintiff as the rightful owner and CEO of the company– and that Defendant has no interest in the company and must relinquish any and all indicia of ownership and control.

5. Permanent injunctive relief against Defendant in the form specified herewith, which is also being sought on a temporary and preliminary basis, requiring him to restore Plaintiff's access, accounts, and other I.T. infrastructure forthwith.

Date:    April 3, 2024                     By:    _____

                                                  Andrew G. Watters, Esq.
                                                  Attorneys for Plaintiffs Hanieh Sigari and
                                                  Qyral, LLC

VERIFICATION

I, HANIEH SIGARI, certify:

I am the CEO of Qyral, LLC and I make this Verification individually and on behalf of the company.

I have read the foregoing Verified Complaint and certify that the same is true of my own personal knowledge, except as to those matters stated on information and belief, in which case I believe the matters to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    April 3, 2024                     By:    /s/ see attached
                                                  _____

                                                  Hanieh Sigari
                                                  Individually and on behalf of
                                                  Qyral, LLC as its CEO

- 13 -            FIRST AMENDED VERIFIED COMPLAINT

5. Permanent injunctive relief against Defendant in the form specified herewith, which is also being sought on a temporary and preliminary basis, requiring him to restore Plaintiff's access, accounts, and other I.T. infrastructure forthwith.

Date:    April 3, 2024                    By:    _____
                                                 Andrew G. Watters, Esq.
                                                 Attorneys for Plaintiffs Hanieh Sigari and
                                                 Qyral, LLC

## VERIFICATION

I, HANIEH SIGARI, certify:

I am the CEO of Qyral, LLC and I make this Verification individually and on behalf of the company.

I have read the foregoing Verified Complaint and certify that the same is true of my own personal knowledge, except as to those matters stated on information and belief, in which case I believe the matters to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    April 3, 2024                    By:    _____
                                                 Hanieh Sigari
                                                 Individually and on behalf of
                                                 Qyral, LLC as its CEO

- 13 -        FIRST AMENDED VERIFIED COMPLAINT